UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERESA JACOBSEN,<br><br>  Plaintiff,<br><br>v.<br><br>GATESTONE & CO. INTERNATIONAL, INC.<br>and BMO HARRIS BANK, N.A.<br><br>  Defendants. | CIVIL ACTION  1:16-cv-00790<br><br>COMPLAINT<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, TERESA JACOBSEN ( "Plaintiff"), by and through her attorneys, SULAIMAN LAW GROUP, LTD., complaining of the Defendants, GATESTONE & CO. INTERNATIONAL, INC. ("Gatestone") and BMO HARRIS BANK, N.A. ("BMO") as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action for violations of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692, violations of the Bankruptcy Automatic Stay pursuant to 11 U.S.C. §362(k)(1), and violations of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 et seq.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiff resides in this District and the events or omissions giving rise to Plaintiff's claims occurred in this District.

1

**PARTIES**

4. Plaintiff is a consumer and natural person over 18-years-of-age who at all times relevant owned and resided at the property located at 3080 Elleby Court, North Aurora, Illinois 60542 ("subject property").

5. Gatestone is a third-party debt collector with its principal office located at 455 N. 3rd Street, Phoenix, AZ 85004. Its primary business is collecting debts owed, or allegedly owed, to third parties. Gatestone collects third-party debts in Illinois.

6. BMO Harris Bank, N.A. is a United States bank based in Chicago, Illinois. It is a member of the Federal Reserve System and operates branches in the states of Illinois, Indiana, Arizona, Missouri, Minnesota, Kansas, Florida, and Wisconsin.

**BANKRUPTCY CASE**

7. On May 15, 2015, Plaintiff filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 15-17336 ("bankruptcy").

8. Schedule F of Plaintiff's bankruptcy petition listed a debt to BMO for a Diners Club card in the amount of $15,793.39, with an account number ending in 0705. *See* Exhibit A, a true and correct copy of Schedule F filed in Plaintiff's bankruptcy case.

9. Also on May 15, 2015, Plaintiff filed her original Chapter 13 plan. The plan provided for 100% repayment of all general unsecured claims. The Bankruptcy Noticing Center ("BNC") sent BMO notice of the original plan on May 21, 2015. *See* Exhibit B, a true and correct copy of the original Chapter 13 plan and the BNC Certificate of Notice establishing service of the original plan upon BMO.

10. Also on May 21, 2015, the BNC sent BMO a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, & Deadlines. *See* Exhibit C, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing upon BMO.

11. On June 30, 2015, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative of BMO appeared at the 341 Meeting of Creditors.

12. On September 24, 2015, Plaintiff filed her modified Chapter 13 plan ("Modified Plan"). *See* Exhibit D, a true and correct copy of Plaintiff's Modified Plan and BNC Certificate of Notice establishing service of the Modified Plan upon BMO.

13. The Modified Plan also provided for 100% repayment of all general unsecured claims. *Id.*

14. BMO did not file any objection to Plaintiff's Chapter 13 Original or Modified Plan.

15. On September 25, 2015, the Modified Plan was confirmed by the Honorable Donald R. Cassling. *See* Exhibit E, a true and correct copy of the Confirmation Order.

16. At some point after Plaintiff filed her bankruptcy, but before the confirmation of her modified plan, BMO placed her account with Gatestone for collections.

17. On June 13, 2015, Gatestone sent Plaintiff a dunning letter demanding payment of the BMO account in the amount of $17,007.74. The dunning letter referenced the BMO account ending in 0705. *See* Exhibit F, a true and correct copy of the June 13, 2015 dunning letter.

18. Concerned about violations of her rights and protections afforded by bankruptcy laws, Plaintiff sought the assistance of counsel to ensure that BMO and Gatestone's collection efforts ceased.

19. Plaintiff has expended time consulting with her attorneys as a direct result of BMO and Gatestone's collection actions.

20. Plaintiff has incurred costs and expenses meeting with her attorneys as a result of BMO and Gatestone's collection actions.

21. Plaintiff was unduly inconvenienced and harassed by BMO and Gatestone's collection actions resulting in emotional distress and mental anguish.

22. BMO and Gatestone's collection efforts were highly confusing and upsetting to Plaintiff as she was led to believe that her bankruptcy had no legal effect and that she was still obligated on the subject debt; which was the driving force in her decision to seek bankruptcy protection.

### COUNT I – VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST GATESTONE)

23. Plaintiff restates and realleges paragraphs 1 through 22 as though fully set forth herein.

24. Plaintiff is a "consumer" as defined by FDCPA §1692a(3).

25. The subject debt qualifies as a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction for personal, family, or household purposes.

26. Gatestone qualifies as a "debt collector" as defined by §1692a(6) because Gatestone regularly collects debts and uses the mail and/or the telephones to collect delinquent consumer accounts.

27. Gatestone qualifies as a "debt collector" because Gatestone acquired rights to the subject loan after it was in default. 15 U.S.C. §1692a(6).

28. Bankruptcy Code Section 362(a)(6), commonly known as the automatic stay provision, prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(6).

29. Gatestone violated 15 U.S.C. §§1692 c(a)(2), e(2), e(10), and f(1) through its debt collection efforts on a pre-petition debt currently in bankruptcy.

 a. **Violations of FDCPA §1692c**

30. Gatestone violated §1692 c(a)(2), by sending the dunning letters directly to Plaintiff when it knew that Plaintiff was represented by counsel. The identity and contact information of Plaintiff's counsel was expressly stated in the Notice of Chapter 13 filing, which is a matter of public record, and was served upon Gatestone through its principal, BMO.

 b. **Violations of FDCPA §1692e**

31. Gatestone violated §1692e(2) by falsely representing that the subject debt was owed at the time it sent its dunning letter, when in fact it was not by virtue of the bankruptcy automatic stay.

32. Gatestone violated §1692e(5) by sending the dunning letter to Plaintiff because it had no legal right to attempt to collect the subject debt by virtue of the bankruptcy automatic stay.

33. Gatestone violated §1692e(10) by engaging in deceptive conduct as the subject debt was not owed at the time it made its demands on the subject debt through its dunning letter.

 c. **Violations of FDCPA §1692f**

34. Gatestone violated §1692f(1) by attempting to collect a debt not permitted by law as the automatic stay prohibits collection of the subject debt.

35. Gatestone violated §1692f by attempting to coerce and induce Plaintiff into paying a debt that was not legally owed.

36. As an experienced creditor and debt collector, Gatestone knew or should have known the ramifications of collecting on a debt that was protected by the automatic stay.

37. Gatestone knew or should have known that the subject debt was uncollectable as a matter of law.

WHEREFORE, Plaintiff requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;
b. Award Plaintiffs statutory and actual damages, in an amount to be determined at trial, for the underlying FDCPA violations;
c. Award Plaintiffs costs and reasonable attorney fees as provided under 15 U.S.C. § 1692k; and
d. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II- VIOLATION OF THE AUTOMATIC STAY
(AGAINST GATESTONE)

38. Plaintiff restates and realleges paragraphs 1 through 22 as though fully set forth herein.

a. Section **11 U.S.C. §362(a)(6)**

39. The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007).

40. Section 362(a)(6), commonly known as the automatic stay provision, prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(6).

41. "The automatic stay invoked by the filing of a bankruptcy petition protects a debtor from creditors' attempts to collect pre-petition debts. The automatic stay is designed to give debtors breathing space so that they may reorder their affairs." *In re Robinson*, 228 B.R. 75, 80. (Bankr.E.D.N.Y.1998).

42. "As one of the fundamental debtor protections provided by bankruptcy laws, the automatic stay is intended to stop virtually all debt collection efforts, including efforts to take possession of collateral." *In re Bishop*, 296 B.R. 890, 894 (Bankr.S.D.Ga.2003).

**b. Gatestone's violation of the Automatic Stay**

43. Notwithstanding having notice of Plaintiff's bankruptcy, Gatestone sent Plaintiff a dunning letter soliciting immediate payments.

**c. Gatestone's conduct was perpetual, willful, and wanton**

44. Gatestone had knowledge of Plaintiff's bankruptcy through its principal, BMO, and the public record.

45. Despite having actual knowledge of Plaintiff's Bankruptcy, Gatestone committed an egregious violation of the automatic stay by failing to cease collection efforts as evidenced by the dunning letter sent to Plaintiff.

46. Gatestone willfully sought to collect a debt from Plaintiff in violation of the automatic stay, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

47. Plaintiff is entitled to actual damages, attorney's fees, and costs for Gatestone's willful violation of the automatic stay. Plaintiff is also entitled to punitive damages for Gatestone's arrogant defiance of the Bankruptcy Code and its provisions. The Court should award punitive damages to deter Gatestone from future misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

    a. Enter an order directing Gatestone to pay a sum determined by the Court to Plaintiffs for actual damages for violations of 11 U.S.C. §362(k)(1);

    b. That this Honorable Court enter an order directing Gatestone to pay a sum determined by the Court to Plaintiff for punitive damages for violations of 11 U.S.C. § 362(k)(1);

    c. That this Honorable Court enter an order directing Gatestone to pay a sum determined by the Court to Plaintiff for all reasonable legal fees and expenses incurred by their attorneys for violations of 11 U.S.C. §362(k)(1); and

    d. That Plaintiff be provided such other and further relief as the Court may deem just and proper.

**COUNT III- VIOLATION OF THE AUTOMATIC STAY**
(AGAINST BMO)

48. Plaintiff restates and realleges paragraphs 1 through 22 as though fully set forth herein.

    a. Section **11 U.S.C. §362(a)(6)**

49. The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007).

50. Section 362(a)(6), commonly known as the automatic stay provision, prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(a)(6).

51. "The automatic stay invoked by the filing of a bankruptcy petition protects a debtor from creditors' attempts to collect pre-petition debts. The automatic stay is designed to give debtors breathing space so that they may reorder their affairs." *In re Robinson*, 228 B.R. 75, 80. (Bankr.E.D.N.Y.1998).

52. "As one of the fundamental debtor protections provided by bankruptcy laws, the automatic stay is intended to stop virtually all debt collection efforts, including efforts to take possession of collateral." *In re Bishop*, 296 B.R. 890, 894 (Bankr.S.D.Ga.2003).

    **b. BMO's violation of the Automatic Stay**

53. Notwithstanding having actual notice of Plaintiff's bankruptcy, BMO placed Plaintiff's debt with Gatestone for collections. BMO received notice of Plaintiff's bankruptcy. As a

sophisticated creditor, it should have known that attempting to collect a debt during the automatic stay is prohibited. Regardless, it sought to collect the debt via Gatestone.

### c. BMO's conduct was perpetual, willful, and wanton

54. BMO had knowledge of Plaintiff's bankruptcy through the BNC and the public record.

55. Despite having actual knowledge of Plaintiff's Bankruptcy, BMO committed an egregious violation of the automatic stay by failing to cease collection efforts as evidenced by the dunning letter sent to Plaintiff.

56. BMO willfully sought to collect a debt from Plaintiff in violation of the automatic stay, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

57. Plaintiff is entitled to actual damages, attorney's fees, and costs for BMO's willful violation of the automatic stay. Plaintiff is also entitled to punitive damages for BMO's arrogant defiance of the Bankruptcy Code and its provisions. The Court should award punitive damages to deter BMO from future misconduct.

WHEREFORE, Plaintiff requests that this Honorable Court:

    e. Enter an order directing BMO to pay a sum determined by the Court to Plaintiffs for actual damages for violations of 11 U.S.C. §362(k)(1);

    f. That this Honorable Court enter an order directing BMO to pay a sum determined by the Court to Plaintiff for punitive damages for violations of 11 U.S.C. § 362(k)(1);

    g. That this Honorable Court enter an order directing BMO to pay a sum determined by the Court to Plaintiff for all reasonable legal fees and expenses incurred by their attorneys for violations of 11 U.S.C. §362(k)(1); and

    h. That Plaintiff be provided such other and further relief as the Court may deem just and proper.

COUNT IV – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT
(AGAINST BMO)

58.  Plaintiff restates and reallages paragraphs 1 through 22 as through fully set forth herein.

59.  Plaintiff is a "person" as defined in ICFA, 815 ILCS 505/1, et seq.

    **a. Unfairness**

60.  BMO is engaged in commerce in the State of Illinois with regard to Plaintiff and the subject loan. BMO specializes in lending, banking, and servicing, which are activities within the stream of commerce and utilized in its regular course of business.

61.  BMO's demands for payment on the subject debt, which was duly scheduled in Plaintiff's bankruptcy, represents the use of false pretenses and misleading communication to attempt to collect a debt that was not owed at the time the demands for payment were made.

62.  It was unfair for BMO to seek to collect the subject debt from Plaintiff by hiring a third-party debt collector when BMO knew that Plaintiff had scheduled the debt in her bankruptcy.

63.  It was unfair for BMO to attempt to induce Plaintiffs into making payment on a uncollectible debt by hiring a third-party debt collector to harass her.

64.  It was unfair for BMO to contact Plaintiff directly via its third-party debt collector, knowing that she was represented by an attorney.

65.  BMO intended that Plaintiff rely on the its unfair acts and Plaintiff did in fact rely on the unfair acts to her detriment.

66.  BMO bullied Plaintiff into submission with perpetual unfair and deceptive conduct through lies, harassment, and deception regarding the collectability of the subject debt.

67. An award of punitive damages is appropriate because BMO's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers generally; Plaintiff had no choice but to submit to BMO's conduct.

WHEREFORE, Plaintiffs requests that this Honorable Court:

a. Enter judgment in Plaintiffs favor and against BMO;
b. Award Plaintiffs their actual damages in an amount to be determined at trial;
c. Award Plaintiffs punitive damages in an amount to be determined at trial;
d. Award Plaintiffs their reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
e. Award any other relief this Honorable Court deems equitable and just.

### COUNT V – VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT
### (AGAINST GATESTONE)

68. Plaintiff restates and reallages paragraphs 1 through 22 as through fully set forth herein.

69. Plaintiff is a "person" as defined in ICFA, 815 ILCS 505/1, et seq.

**a. Unfairness**

70. Gatestone is engaged in commerce in the State of Illinois with regard to Plaintiff, the subject loan, and the subject property. Gatestone specializes in debt collection, which is an activity within the stream of commerce, utilized in its regular course of business.

71. Gatestone's demand for payment on the subject debt, which was duly scheduled in Plaintiff's bankruptcy, represents the use of false pretenses and misleading communication to attempt to collect a debt that was not owed at the time the demand for payment was made.

72. It was unfair for Gatestone to seek to collect the subject debt from Plaintiff through its misleading letter.

73. It was unfair for Gatestone to attempt to induce Plaintiff into making payments on a uncollectible debt by sending a dunning letter to Plaintiff.

74. Gatestone intended that Plaintiffs rely on the their unfair acts and Plaintiffs did in fact rely on the unfair acts to their detriment.

75. Gatestone bullied Plaintiff into submission with unfair and deceptive conduct through lies, harassment, and deception regarding the collectability of the subject debt.

76. An award of punitive damages is appropriate because Gatestone's conduct described above was outrageous, willful and wanton, showed a reckless disregard for the rights of Plaintiff and consumers generally. Plaintiff had no choice but to submit to the Gatestone's conduct.

WHEREFORE, Plaintiffs requests that this Honorable Court:

**f.** Enter judgment in Plaintiffs favor and against Gatestone;
**g.** Award Plaintiffs their actual damages in an amount to be determined at trial;
**h.** Award Plaintiffs punitive damages in an amount to be determined at trial;
**i.** Award Plaintiffs their reasonable attorney's fees and costs pursuant to 815 ILCS 505/10a(c); and
**j.** Award any other relief this Honorable Court deems equitable and just.

**Plaintiff demands trial by jury.**

Dated: January 19, 2016                    Respectfully Submitted,

/s/ Matthew H. Hector

Matthew H. Hector
*Counsel for Plaintiff*
Sulaiman Law Group, LTD
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
mhector@sulaimanlaw.com